IN THE UNITED STATES DISTRICT COURT
                    FOR THE SOUTHERN DISTRICT OF OHIO
                            EASTERN DIVISION


Yon Bivens,                          :

          Plaintiff,                 :

     v.                              :    Case No. 2:05-cv-0445

Jeff Lisath, et al.,                 :    JUDGE GRAHAM

          Defendants.                :


                    REPORT AND RECOMMENDATION

     Plaintiff, Yon Bivens, a state prisoner, filed a complaint
seeking compensatory and punitive damages against various
employees of the Ross Correctional Institution, pursuant to 42
U.S.C. §1983.  Mr. Bivens's claims all arise out of an assault
committed by other inmates at Ross.  Presently before the Court
are plaintiff's motion for summary judgment (#63), a motion to
dismiss some of the defendants for failure of service (#53), and
defendants' second motion for summary judgment (#57).  For the
following reasons, the Court will recommend that plaintiff's
motion for summary judgment be denied, the motion to dismiss be
granted, and the defendants' second motion for summary judgment
be granted.

                              I.

     The Court will turn first to Mr. Bivens's motion for summary
judgment because the issues raised by that motion require
resolution before the Court can address fully the other pending
motions.  Mr. Bivens's motion is actually a motion for sanctions
pursuant to Fed. R. Civ. P. 37.  Summary judgment is the sanction
Mr. Bivens is seeking for defendants' alleged failure to comply
with his discovery requests.  This motion will be construed as a
motion for default judgment against the defendants pursuant to
Fed.R.Civ.P. 37(b).

In support of his motion, Mr. Bivens asserts that, despite this Court's granting of his motion to compel, the defendants have refused to produce the majority of requested discovery. According to Mr. Bivens, no information helpful to his case has been provided by the defendants despite what Mr. Bivens considers to be the "obvious existence" of this information. Specifically, Mr. Bivens contends that the defendants are refusing to produce photos and full names of their employees in order to protect these individuals. Further, Mr. Bivens asserts that defendants have "tampered" with the evidence concerning his medical records by failing to produce any records of the beating which forms the basis of this action. Finally, Mr. Bivens contends that certain documents relating to incident reports which were produced, although not requested, indicate the length to which defendants will go to avoid their discovery obligations.

In response, defendants contend that Mr. Bivens's motion must be denied for his failure to comply with Fed.R.Civ.P. 37(a)(2)(A) which requires that a motion for sanctions include a certification that the movant has in good faith conferred or attempted to confer with the party failing to make the disclosure. Additionally, they contend that, despite having filed this action in 2005, Mr. Bivens did not seek any document production until January 2008. According to the defendants, many of the documents Mr. Bivens requested date back to 2003 and are no longer available because the ODRC only retains such documents for a three-year period. Further, the defendants object to Mr. Bivens's request for copies of the photo IDs for hundreds of employees on grounds of undue burden and institutional security. Additionally, defendants contend that Mr. Bivens's medical record is always available to him for copying at his own expense.

In reply, Mr. Bivens argues that he has made several attempts to obtain the requested discovery. According to Mr.

2

Bivens, his first attempt resulted in a motion to compel and a
further attempt remains unanswered by the defendants.  Mr. Bivens
suggests that, because defendants have not sought a protective
order with respect to any discovery requests, they are obligated
to provide all of the information he is seeking.  Additionally,
Mr. Bivens contends that, despite defendants' explanation of a
three-year retention policy and their release to him of his
medical records dating only from 2005 forward, they were able to
produce his medical records relating to his beating in 2003 to
support their own filings.  Finally, Mr. Bivens asserts that
defendants' objections to his request to provide the pictures and
names of hundreds of employees is unfounded because this
information does not present a security risk.

Fed.R.Civ.P. 37(b) authorizes sanctions for a party's
failure to obey an order requiring discovery.  The strongest
sanction available to address discovery abuses is the entry of a
default judgment against a defendant or an order of dismissal
against a plaintiff.  Quinn v. Kennedy, No. 1:07-cv-1036, 2008 WL
4145445 (W.D. Mich., Aug. 20, 2008)(citing Grange Mut. Cas. Co.
v. Mack, 270 F.App'x 372, 376 (6th Cir. 2008)).  In the Sixth
Circuit, courts are to consider four factors including (1)
whether the party's failure to cooperate in discovery is due to
willfulness, bad faith, or fault; (2) whether the adversary was
prejudiced by the party's failure to cooperate in discovery; (3)
whether the party was warned that failure to cooperate could lead
to the sanction; and (4) whether less drastic sanctions were
first imposed or considered.  Quinn at *1 (citing Freeland v.
Amigo, 103 F.3d 1271, 1277 (6th Cir. 1997)).

Here, there is no evidence in the record which would allow
the Court to evaluate any of the above factors in considering Mr.
Bivens's motion for sanctions.  Rather, as the issue of discovery
in this matter currently stands, defendants have responded to the

3

motion to compel. Their response included the production of some documents and their objection to the production of certain other documents on grounds that the requests were "irrelevant, overly-broad and unduly burdensome" and for "security reasons." See Doc. 63-2 at p. 2. In providing an objection, the defendants shifted the burden to Mr. Bivens to either clarify his discovery requests or seek an order from this Court directing defendants to comply with the requests as originally phrased. Info-Hold, Inc. v. Sound Merchandising, Inc., __F.3d__, 2008 WL 3823045 at *7 (6th Cir. Aug. 18, 2008)(citing Fed.R.Civ.P.26(b)(2); Fed.R.Civ.P. 33(b)(4)).

There is no indication in this record that Mr. Bivens attempted either of these options. While, as noted, Mr. Bivens did pursue a motion to compel initially, he did not pursue any further motion to compel after the defendants provided the discovery responses required by the Court's order. Further, Mr. Bivens has not provided any evidence that he attempted to clarify his discovery requests in response to defendants' objections. In fact, his motion for summary judgment indicates quite the contrary. Similarly, there is no evidence that Mr. Bivens pursued either an attempt at informal resolution or further motion to compel arising from his belief that the defendants made incomplete responses to the requests about which they had no objection. The informal attempt to which Mr. Bivens makes reference predates his motion to compel. See Doc. #69-2. Absent such action on Mr. Bivens's part, the record before the Court demonstrates defendants' compliance with the order to compel. Consequently, the Court will recommend denial of Mr. Bivens's motion for summary judgment, construed as a motion for default judgment under Fed.R.Civ.P. 37(b).

II.

Turning to the motion to dismiss filed on behalf of

4

defendants Nordick, Harris, and Davis, the Attorney General has brought this motion asserting that Mr. Bivens did not serve these defendants within the 120-day deadline established by Fed. R. Civ. P 4(m) or at any time during the more than three-year period that this matter has been pending. In response, Mr. Bivens argues that he has been unable to serve these defendants because the ODRC will not cooperate with him.

This is not the first time the issue of failure of service with respect to these defendants has been raised. This issue was originally raised on behalf of the defendants in a motion to dismiss filed April 17, 2006, more than one year after this case was filed. See Doc. #10. By order dated January 5, 2007, Mr. Bivens was given an additional sixty days to obtain information concerning the three unserved defendants, to provide the information to the United States Marshal, and to obtain service. See Doc. #13. Mr. Bivens was instructed that his failure to do so would result in the dismissal of the claims against these defendants without prejudice.

There is no evidence in the record indicating that Mr. Bivens undertook to gather this information within the additional sixty-day period granted by the Court. Rather, the record in this case reflects the following. On March 6, 2007, Mr. Bivens filed a motion for subpoena through which he apparently was attempting to obtain discovery relating to a variety of information, including any information that would identify these defendants. See Doc. #22. By order dated June 1, 2007, Mr. Bivens's motion for subpoena was denied as premature because there was no evidence that Mr. Bivens had attempted to obtain the requested information through normal discovery processes. See Doc. #24. Mr. Bivens did not attempt to serve discovery requests on defendants until October 25, 2007, nearly four months after the Court had denied his request for a subpoena. See Plaintiff's

Motion for Discovery (#45).

It is clear from the record in this case that Mr. Bivens did not attempt to gather any information relevant to the location of these defendants in a timely manner, despite having been afforded such an opportunity by the Court.  Mr. Bivens cannot place responsibility for his delay on the defendants' objection to his discovery requests.  As discussed above, the defendants' objection to his discovery requests relating to this information shifted the burden to Mr. Bivens to clarify his  requests or seek further order of this Court.  Info-Hold, Inc. Mr. Bivens did not pursue either option.  In light of Mr. Bivens's late and incomplete attempts to obtain any information that would assist him in serving these defendants, it is recommended that the motion to dismiss filed on behalf of the unserved defendants, Nordick, Harris and Davis be granted.

III.

Turning next to the defendants' motion for summary judgment, summary judgment is not a substitute for a trial when facts material to the Court's ultimate resolution of the case are in dispute.  It may be rendered only when appropriate evidentiary materials, as described in Fed. R. Civ. P. 56(c), demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464 (1962).  The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).  Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party.  United States v. Diebold, Inc., 369 U.S. 654 (1962). The nonmoving party does have the burden, however, after

6

completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Of course, since "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion. It is with these standards in mind that the instant motion must be decided.

IV.

Mr. Bivens is asserting a violation of his Eighth Amendment rights based on the following allegations of his verified complaint. According to Mr. Bivens, on May 27, 2003, he was assaulted by three inmates while asleep in his cell located in Cell Block 4-A. Mr. Bivens states that two of these inmates were from another cell block and these inmates were able to unlock his cell using a key obtained from one of the corrections officers on duty that day, either Officer Harris or Officer Mallory. Further, Mr. Bivens asserts that Officers Davis and Powers were the block corrections officers in Cell Block 4-A on May 27, 2003. As set forth in the complaint, Mr. Bivens suffered a variety of injuries in the attack including injuries to his head, ribs, shoulder, arm, neck and spine. Mr. Bivens contends that Mr. Lisath, Capt. Nordick, Lt. Posey, Mr. Parker and Mr. Whitten acquiesced in the assault and the actions of the corrections officers.

7

Mr. Bivens also testified during his deposition to the following information relevant to the claims set forth in his complaint.  On the morning of May 3, 2003, he was threatened by his cellmate, Jamal Wolf and another inmate, Squeaky Washington. Depo. at 9.  Following this incident and other events of that day, including the theft of some of his property, Mr. Bivens was placed in a cell by himself in segregation.  Id. at 28-29, 36. Defendants Lisath and Posey were aware of these events.  Id. While in segregation, Mr. Bivens wrote informal complaints.  Id. at 30.

Following his release from segregation, Mr. Bivens was moved to the north side of the camp.  Id. at 29.  While in the north side of the camp, Mr. Bivens had some paper work and "little small stuff" taken from his cell.  Id. at 31.  Officer Mallory offered to help Mr. Bivens retrieve his property. Id. at 31-32. At some point, an inmate by the name of "Chief Ward" "came into the picture" and Officer Mallory ultimately did not help Mr. Bivens recover any of his stolen property.  Id. at 32.  Officer Mallory and "Chief Ward" knew each other.  Id.

Sometime prior to the assault on May 27, 2003, Mr. Bivens informed Mr. Lisath that his life was in danger.  Id. at 34-35. During this time period, Mr. Bivens did not request placement in protective control because he did not feel it was necessary.  Id. at 36.

The assault on May 27, 2003, involved inmates other than Wolf and Washington.  Depo. at 40.  These inmates were not all from the north side of the camp.  Id. at 44. One of these inmates was "Chief Ward."  Id. at 40.  Following the assault and despite his injuries, Mr. Bivens chased his assailants down the stairs. Id. at 44.  He ran past Officers Powers and Davis.  Id.  Officer Powers did not respond but Officer Davis eventually did once Mr. Bivens was downstairs.  Id.  The inmates who assaulted Mr. Bivens

8

would have had to pass by Officers Powers and Davis to get to Mr. Bivens's cell. Id. Officer Davis took Mr. Bivens to the Captain's office briefly before Mr. Bivens was taken to the infirmary. Id. at 45-46.

In response, the defendants have provided an affidavit from Mr. Lisath with attached exhibits. According to Mr. Lisath's affidavit, in May 2003, Mr. Bivens contacted him regarding various problems he was experiencing at RCI including the continued theft of his property by his cellmates. Affidavit at ¶5. In response, Mr. Lisath moved Mr. Bivens from the South Block to the North Block. Id. These blocks are separate parts of RCI and inmates cannot move freely between them without a special pass. Id. Mr. Lisath believed this move would protect Mr. Bivens. Id.

On, or immediately following, May 27, 200[3], Mr. Lisath learned that Mr. Bivens had been in an altercation in the North Block involving other inmates. Affidavit at ¶6. Mr. Lisath had no knowledge prior to May 27, 2003, that Mr. Bivens would be involved in an altercation. Id. Following the altercation, Mr. Bivens was moved to security control for an investigation and his own protection. Id. Mr. Bivens originally requested protective control following this incident but later indicated he didn't want to go to protective control at WCI and ultimately indicated that he wanted to return to the South Block of RCI. Id. at ¶7, Doc. #57-2, pp. 10-32. The RCI Warden denied Mr. Bivens's requests to be removed from security control and recommended that Mr. Bivens be transferred to the general population at WCI. Id. at ¶8, Doc. #57-2, pp. 5-9. On June 25, 2003, Mr. Bivens was transferred from security control at RCI to protective control at WCI. Id., Doc. #57-2, p. 33.

According to Mr. Lisath, the ability of inmates to move freely from any area of RCI into the housing area of the North

Side is extremely limited. Affidavit at ¶11. In order to do so, an inmate would be required to have a valid pass to display at three different checkpoints called "tie stations." Id. At each tie station, an inmate would undergo progressive scrutiny. Id. Inmates are allowed into housing areas where they do not reside under extremely rare circumstances. Id. Further, staff does not allow inmates access to keys. Id. at ¶12.

Defendants have also provided Mr. Bivens's medical records which contain the following information. Mr. Bivens was treated for injuries due to a fight on May 27, 2003. Doc. #57-2 at p. 49. He was treated for a scrape to his leg. Id. His gait was noted as steady, his speech was clear, and he had red marks on his right shoulder and on the right side of his neck. Id. at p. 35. Mr. Bivens was administered a mouth rinse for a bite to his tongue and although he reported injuries to his groin area, the notes reflect that there were no obvious injuries or bleeding. Id.

Also attached to Mr. Lisath's affidavit as Exhibits 1 through 28 are various inmate-staff communications called "kites," portions of protective control records and Mr. Bivens's inmate voluntary statement. These documents reflect various communications between Mr. Bivens and Mr. Lisath and between other administrative personnel at RCI and Mr. Bivens.

V.

In their motion for summary judgment, defendants contend that Mr. Bivens's claims concerning how the inmates who assaulted him gained access to his housing area are nothing more than speculation and conjecture. Further, they argue that Mr. Bivens has failed to establish the elements of an Eighth Amendment failure to protect claim. Additionally, the defendants assert that they lack personal involvement in any of Mr. Bivens's claims and that they are entitled to qualified immunity.

In response, Mr. Bivens disputes the defendants' arguments
at length.  In support of his position, Mr. Bivens has provided
copies of three precertification determination notices from the
London Correctional Institution dated October 26, 2007, a
decision of the Chief Inspector of LOCI dated August 23, 2007, an
"affidavit in support" from his wife, Kathleen Achatz, and an
"affidavit" with an attached letter to Mr. Lisath from his
sister, Ceola Garrett.

In reply, the defendants have moved to strike the documents
filed by Mr. Bivens on grounds that they are not based on
personal knowledge and contain nothing but self-serving
conclusions and hearsay.  Further, defendants contend that each
document is defective on its face for a number of reasons
described below.

VI.

Before turning to the merits of the motion for summary
judgment, the Court will address the motion to strike.  The Court
notes that Ms. Achatz had her affidavit notarized and Ms. Garrett
has affirmed the statements in her affidavit.  The Court will
construe these efforts by Ms. Achatz and Ms. Garrett as their
attempt to provide sworn affidavits.  However, in order to be
considered by the Court on a motion for summary judgment, an
affidavit must satisfy three formal requirements: (1) it "shall
be made on personal knowledge"; (2) it "shall set forth such
facts as would be admissible in evidence" at the time of trial;
and (3) it "shall show affirmatively that the affiant is
competent to testify to the matters stated therewith." Fed. R.
Civ. Pro. 56(e).

There is no question that parties must demonstrate that
their summary judgment affidavits are made on personal knowledge.
Giles v. University of Toledo, 241 F.R.D. 466 (N.D. Ohio 2007)
aff'd, 2008 WL 2744586 (6th Cir., July 16, 2008) (citing Sperle

11

v. Michigan Dept. of Corrections, 297 F.3d 483, 495 (6th Cir.
2002) and Smartt v. Clifton, No. C-3-96-389, 1997 WL 1774874, at
*11 (S.D.Ohio Feb. 10, 1997)); Fed. R. Civ. Pro. 56(e).
Additionally, courts cannot consider inadmissible hearsay in an
affidavit when ruling on a summary judgment motion. Giles, at
471 (citing North American Specialty Ins. Co. v. Myers, 111 F.3d
1273, 1283 (6th Cir.1997)). Hearsay is "a statement, other than
one made by the declarant while testifying at the trial or
hearing, offered in evidence to prove the truth of the matter
asserted." Fed.R.Evid. 801(c). Affidavits that do not meet the
above requirements are subject to a motion to strike and will not
be considered by the Court in ruling upon a motion for summary
judgment. Reddy v. Good Samaritan Hosp. & Health Ctr., 137
F.Supp.2d 948, 954 (S.D. Ohio 2000). In resolving a motion to
strike, however, the Court should use "a scalpel, not a butcher
knife." Perez v. Volvo Car Corp., 247 F.3d 303, 315-16 (1st
Cir.2001).

Here, the Court notes that defendants have made a blanket
objection to the affidavits submitted by Mr. Bivens rather than
addressing specific statements in these documents. However, the
Court's reading of these documents indicates that at least some
of the information relates to actions directly taken by Ms.
Achatz or Ms. Garrett. For example, Ms. Achatz states in her
affidavit that following the events in early May, she called the
facility and spoke to Lt. Posey in an effort to report those
events. Additionally, she describes the injuries to Mr. Bivens
she observed during her visit with him immediately following the
events of May 27th. Further, Ms. Garrett states that she
contacted Warden Hurley of RCI, Lt. Posey, Mr. Lisath, and Ms.
Doty on behalf of her brother.

Given the fact that the defendants have not objected to
these affidavits with any degree of specificity and the fact that

these documents contain some statements based on personal knowledge, the Court will not recommend striking these documents in their entirety.  However, for purposes of addressing the motion for summary judgment, the Court will consider only those statements meeting the requirements of Fed.R.Civ.P. 56(c).

### VII.

The Eighth Amendment generally prohibits prison officials from being "deliberately indifferent" to the health or safety of prison inmates and, as a result, causing them to suffer unnecessary or purposeless pain or injury.  In Farmer v. Brennan, 511 U.S. 825, 839 (1994), the Court adopted "subjective recklessness as used in the criminal law" as the appropriate definition for deliberate indifference.  It held that "a prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety ...."  Id. at 837.  Officials must be aware of facts from which they could conclude that a substantial risk exists and must actually draw that conclusion.  Id.  Prison officials who know of a substantial risk to the health or safety of an inmate are free from liability if "they responded reasonably to the risk, even if the harm ultimately was not averted."  Id. at 844.

### VIII.

Defendants assert that Mr. Bivens has failed to set forth an Eighth Amendment failure to protect claim.  While there is some dispute regarding the severity of his injuries, there is no dispute that Mr. Bivens was assaulted on May 27, 2003.  However, in order to prevail, Mr. Bivens must demonstrate more than the fact that he was injured in an assault.  As set forth above, he must demonstrate at a minimum that the defendants were

13

subjectively aware of the risk of assault yet took no steps to prevent it (or actively assisted the inmates who committed the assault).  <u>Farmer</u>; <u>see also</u> <u>Greene v. Bowles</u>, 361 F.3d 290, 294 (6th Cir. 2004).  Consequently, the Court will turn first to the issue of whether a reasonable trier of fact could conclude that any of the defendants had knowledge of a substantial risk of serious harm to Mr. Bivens.

The evidentiary material relevant to this issue, construed in the light most favorable to Mr. Bivens, demonstrates the following.  Mr. Bivens was involved in an incident on May 3 and threatened prior to the May 27 incident.  According to Mr. Bivens's deposition testimony, Lt. Posey and Mr. Lisath had knowledge of the May 3 events.  In response to the May 3 incident, Mr. Bivens was placed in segregation and eventually moved to the other side of the institution.  Shortly after his move to the north side, Mr. Bivens had some of his papers and small items stolen.  Officer Mallory offered to help Mr. Bivens retrieve his lost property although ultimately he did not help. At some point between Mr. Bivens's release from segregation and May 27, 2003, he told Mr. Lisath that he believed his life was in danger based on threats he was receiving.  Despite these threats, Mr. Bivens did not request protective custody because he did not believe it was necessary.  The inmates who assaulted Mr. Bivens on May 27 were not the same inmates involved in the incidents of May 3.  Not all of these inmates were from the north side.  One of the inmates was known as "Chief Ward."  Chief Ward and Officer Mallory knew each other.  Following the assault on May 27, there was enough concern for Mr. Bivens's safety that he was ultimately transferred out of RCI to WCI.

As set forth above, Mr. Bivens must show that each defendant he seeks to hold accountable had actual knowledge of a substantial risk to his safety.  <u>Farmer</u>, 511 U.S. at 837.  The

14

defendants remaining in this case are not all in the same position.  Only some of them are alleged to have had some knowledge of the events occurring prior to the assault on May 27, and not all of those defendants had the same amount of knowledge. The Court will consider the defendants in order of their alleged degree of knowledge.

Robert Whitten and Rick Parker

Mr. Whitten is the institutional inspector for RCI and Mr. Parker is a case manager.  Nowhere in his complaint or his deposition testimony does Mr. Bivens allege that these defendants were aware of any facts from which they could conclude that a substantial risk to Mr. Bivens's safety existed.  The complaint merely alleges the "acquiescence" of these defendants in the "actions of the CO's and inmates" on May 27.

To the extent that Mr. Bivens may be suggesting in his complaint that these defendants should have been aware of a risk based on grievances he had filed, Mr. Bivens has not provided any evidence regarding the specifics of these grievances.  Absent such evidence, it would not be possible for a trier of fact to conclude that these grievances provided either Mr. Whitten or Mr. Parker information from which they could have had any awareness of a substantial risk of harm to Mr. Bivens.

The Court notes that Mr. Bivens testified in his deposition that copies of his "papers" including grievance forms were repeatedly stolen from his cell and, as a result, Mr. Bivens may have been unable to produce copies to demonstrate the information provided to these defendants.  However, Mr. Bivens did not pursue any other means of providing specific evidence to the Court, either through his deposition testimony or otherwise, regarding the contents of any grievances he submitted to Mr. Whitten or Mr. Parker alerting them to his risk of harm.  Consequently, the

15

Court will recommend that the motion for summary judgment be
granted as to Mr. Whitten and Mr. Parker based on the absence of
any evidence that they knew Mr. Bivens might be in danger of an
inmate assault.

<u>Lt. Posey</u>

Mr. Bivens also alleges that Lt. Posey "acquiesced" in the
activities of the CO's and the inmates on May 27, 2003.  During
his deposition, however, Mr. Bivens testified that Lt. Posey had
knowledge of the events of May 3, 2003.  Further, both Mr.
Bivens's wife and sister submitted affidavits indicating that
they had contacted Lt. Posey about the events of May 3.

Accepting as true Mr. Bivens's allegations that Lt. Posey
was aware of the May 3 events, Mr. Bivens has provided no
evidence that such knowledge caused him to be aware of any
further risk to Mr. Bivens.  For example, Mr. Bivens has not
presented any evidence that he or anyone else communicated to Lt.
Posey any specific threats he was receiving after the events of
May 3 involving Chief Ward or any other inmates.  Such evidence
is necessary to raise a genuine issue of material fact here
because there is no dispute that following the events of May 3,
Mr. Bivens was placed in segregation and eventually moved to
another section of the facility.  Likewise there is no dispute
that the inmates allegedly involved in the assault on May 27 were
not the same inmates involved in the events of May 3.

On these facts it would be unreasonable to infer that Lt.
Posey drew the conclusion that Mr. Bivens was at continued risk
after May 3, when there is no evidence that he was aware of any
facts from which such a conclusion could be drawn.  <u>See</u> <u>e.g.</u>
<u>Bills v. Aseltine</u>, 958 F.2d 697, 708 (6th Cir. 1992) (citing
<u>Anderson</u>, 477 U.S. at 249-250) ("Facts may be established by
inference, but the inferences must be reasonable ones.").  <u>See</u>

16

also <u>Smith v. Sundmacher</u>, No. 1:05-cv-64, 2006 WL 3091968 at *4
(W.D. Mich. Oct. 30, 2006)(citing <u>Beard v. Banks</u>, 548 U.S. 521,
530)("Although at the summary judgment stage the court must draw
inferences in the plaintiff's favor, these inferences must be
justifiable ones").  Absent any such evidence from Mr. Bivens, he
has failed to raise a genuine issue of material fact with respect
Lt. Posey's knowledge.  Consequently, the Court will recommend
that summary judgment be granted in favor of Lt. Posey.

    <u>Officer Powers</u>

    With respect to Officer Powers, in his complaint Mr. Bivens
alleges only that Officer Powers was a block CO on the day of the
assault.  In his deposition, he testified that his assailants
would have had to pass by Officer Powers to enter his cell.
Further, Mr. Bivens testified that Officer Powers did not respond
when Mr. Bivens ran from his cell in pursuit of his assailants.
Mr. Bivens seems to be suggesting that Officer Powers's actions
indicate his knowledge of risk of harm, or perhaps his complicity
in the attack.

    However, Mr. Bivens is required to offer more than a veiled
suggestion of Officer Powers's knowledge or complicity in order
to survive summary judgment.  As noted above, while facts may be
established by inference, the inferences must be reasonable ones.
Here, Mr. Bivens has failed to produce any evidence from which it
reasonably could be inferred that Officer Powers knew that the
assailants were entering the cell block to harm Mr. Bivens.  For
example, Mr. Bivens did not testify in his deposition that he
actually saw his assailants pass by Officer Powers.  He simply
assumed they did so based on their point of access to the cell
block.  Similarly, Mr. Bivens did not testify that Officer Powers
was aware of the assault and was summoned or available to respond
following the assault and simply refused.  Nor did Mr. Bivens
offer any evidence regarding issues such as known interactions

between Officer Powers and the assailants, specific motivation Officer Powers may have had for allowing an assault on Mr. Bivens, or any other information indicating Officer Powers's knowledge. In short, Mr. Bivens has not presented any evidence which would allow a trier of fact to conclude that Officer Powers possessed the requisite knowledge of a substantial risk of serious harm as contemplated by <u>Farmer</u>. Consequently, the Court will recommend that summary judgment be granted in favor of Officer Powers.

   <u>Deputy Warden Lisath</u>

   Mr. Bivens has made a more significant allegation of actual knowledge regarding Mr. Lisath. In his deposition, Mr. Bivens testified that he told Mr. Lisath, presumably sometime after May 3 but prior to May 27, 2003, that he feared for his life. However, as with all of Mr. Bivens's allegations, this conclusory allegation is insufficient to raise a genuine issue of material fact regarding whether Mr. Lisath actually had knowledge that a substantial risk of harm to Mr. Bivens existed.

   In his affidavit, Mr. Lisath testified that he had no knowledge that Mr. Bivens would be involved in an altercation on May 27. Lisath Affidavit at ¶6. While Mr. Lisath was aware of the events earlier in May, he believed that Mr. Bivens's transfer to the North Block would protect Mr. Bivens. <u>Id</u>. According to Mr. Lisath, he believed that he had addressed Mr. Bivens's concerns. <u>Id</u>. at 5. Consequently, accepting as true Mr. Bivens's allegation that he told Mr. Lisath that he feared for his life, Mr. Lisath's affidavit indicates that he did not draw the conclusion that, once Mr. Bivens had been removed from the South Block, a substantial risk to Mr. Bivens's safety continued to exist.

   However, the Supreme Court also stated in <u>Farmer</u> that "if an

18

Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find the defendant-official had actual knowledge of the risk.'" <u>Farmer</u>, 511 U.S. at 842.  Mr. Bivens has not presented any such evidence here. Rather, Mr. Lisath's lack of belief that Mr. Bivens was at substantial risk is underscored by the fact that, despite his claim that his life was in danger, Mr. Bivens never requested protective custody between May 3 and May 27 because he did not believe it was necessary.  Depo at p. 36.  Clearly, in light of this testimony, Mr. Bivens himself did not believe that he was at risk of serious harm.  If the risk of harm was not obvious to Mr. Bivens, it could not have been obvious to Mr. Lisath.  <u>See</u> <u>Burnley v. Evan</u>, 249 Fed. Appx. 492, 494 (8th Cir. 2007)(citing <u>Berry v. Sherman</u>, 365 F.3d 631, 634 (8th Cir. 2004))(lack of request by a prisoner for protective action when the prisoner is aware of the alleged danger is evidence of a lack of obviousness of the risk).

Similarly, Mr. Bivens's statement to Mr. Lisath that he feared for his life does not indicate the obviousness of the risk.  Such threats are part of everyday prison life.  <u>See</u>, <u>e.g.</u>, <u>Blades v. Schuetzle</u>, 302 F.3d 801, 804 (8th Cir. 2002) ("'threats between inmates are common' and do not, in every circumstance, 'serve to impute actual knowledge of a substantial risk of harm.'") (citations omitted).  Here, Mr. Bivens did not provide evidence that he provided Mr. Lisath with any specific information regarding threats he was receiving which would have allowed Mr. Lisath to draw the conclusion that a threat was real

19

and that its execution was imminent.  For example, he has not indicated that he provided the names of the inmates making threats, the nature of the threats, or any kind of time frame. Absent any more detailed allegations regarding information he provided to Mr. Lisath, a trier of fact could not reasonably draw the inference that Mr. Lisath had knowledge that, following his move to the north side of the institution, Mr. Bivens was at substantial risk of harm.  Consequently, the Court will recommend that summary judgment be granted in favor of Mr. Lisath.

   <u>Officer Mallory</u>

  Turning to Officer Mallory, Mr. Bivens alleges that Officer Mallory may have given the cell door key to Mr. Bivens's assailants.  Similar to his allegations regarding Officer Powers, Mr. Bivens seems to be suggesting that this suspected action on the part of Officer Mallory indicates his knowledge of the risk of harm to Mr. Bivens, and perhaps even his participation.

  In response to this allegation the defendants did not provide an affidavit or any other evidence from Officer Mallory. However, Mr. Lisath addressed this issue in his affidavit by stating that only the block officers, Officers Powers and Davis, would have had access to the cell keys in Mr. Bivens's unit.  <u>See</u> Lisath Aff. at ¶12.  Further, according to Mr. Lisath, under the institution's rules, staff does not allow inmates access to keys. <u>Id</u>.  Additionally, in the ten years that rule has been in place, Mr. Lisath is unaware of an inmate being given access to keys. <u>Id</u>.

  Based on Mr. Lisath's affidavit, the protocol at RCI is that only the block officers have access to cell keys.  According to Mr. Bivens's verified complaint, the block officers on the day of his assault were Officers Davis and Powers.  Accordingly, as Mr. Lisath stated in his affidavit, only Officers Davis and

Powers would have had access to the cell keys. Mr. Bivens does not dispute that the protocol at RCI allows only the block officers to have access to cell keys. Rather, he simply asserts that Officer Mallory is one of two possible corrections officers who provided the cell key to the assailants on May 27 . This conclusory assertion, even if accepted as true, is simply insufficient to withstand a motion for summary judgment.

Once defendants have offered evidence of the protocol regarding access to cell keys, in order to raise a genuine issue of material fact, Mr. Bivens was required to come forward with more than a mere assertion that Officer Mallory may have provided the cell key. For example, Mr. Bivens was required to produce evidence indicating that the protocol described by Mr. Lisath is not the established protocol, that officers other than block officers are routinely granted access to cell keys, that inmates have been granted access to cell keys on various occasions, or minimally, evidence from which the inference could be drawn that Officer Mallory not only may have, but did in fact, provide the cell key to Mr. Bivens's assailants. Mr. Bivens has not provided any evidence of this type.

The Court notes that, unlike with the other defendants, there is some evidence in the record that Officer Mallory had some type of ongoing interaction with "Chief Ward," one of Mr. Bivens's assailants. Mr. Bivens testified to this in his deposition. Further, Mr. Bivens testified that, while Officer Mallory originally offered to help him retrieve certain items stolen from his cell shortly after his move to the north side, once Chief Ward "came into the picture" Officer Mallory did not do so. However, this evidence alone, in light of all the other evidence in the record, would not allow a trier of fact reasonably to infer that Officer Mallory provided the cell key to Mr. Bivens's assailants. Consequently, the Court will recommend

21

that summary judgment be granted in favor of Officer Mallory.

IX.

Based on the foregoing, it is recommended that the motion to dismiss (#53) be granted.  It is further recommended that the plaintiff's motion for summary judgment (#63) be denied. Finally, it is recommended that the defendants' second motion for summary judgment (#57) be granted, and that this case be dismissed with prejudice.

<u>PROCEDURE ON OBJECTIONS</u>

If any party objects to this Report and Recommendation, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. Section 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir.1981).

/s/ Terence P. Kemp<br>United States Magistrate Judge

22